IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CT-3012-M

| | | |
|---|---|---|
| BRADLEY LEAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NORTH CAROLINA DEPARTMENT OF | ) | |
| PUBLIC SAFETY, TINA CAMERON, | ) | |
| CATHY SWAIM, MEREDITH | ) | |
| ELLINGTON, and MICHAEL DITTA, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 26). The issues raised have been fully briefed and in this posture are ripe for decision. For the reasons that follow, the court grants defendants' motion to dismiss.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing a complaint on January 8, 2019, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 and 12134, and the Rehabilitation Act, 29 U.S.C. § 794 (DE 1). Plaintiff alleges defendants Tina Cameron

---

[1] Petitioner names "North Carolina Department of Public Safety" ("NCDPS"), "Ms. Cameron," "Ms. Swaim," "Ms. Ellison," and "Mr. Ditta" as defendants in this action. (See Pet. (DE 1) at 1). While NCDPS was not originally listed as a defendant, it should be so listed. Counsel for defendants represents that defendants' full and correct names are as follows: Tina Cameron, Cathy Swaim, Meredith Ellington, and Michael Ditta. The court has constructively amended the case caption to reflect the correct respondents in this action and will direct the clerk to so amend the caption of the docket.

("Cameron"), the New Hanover Correctional Center ("New Hanover CC") program director, and Cathy Swaim ("Swaim"), a New Hanover CC program supervisor, forced defendant to take a job assignment in the prison   Plaintiff further alleged defendant Meredith Ellington ("Ellington"), an ADA coordinator in Raleigh, denied plaintiff benefits under the ADA, and defendant Michael Ditta ("Ditta"), the New Hanover CC superintendent, discriminated against plaintiff.  Plaintiff does not provide any allegations against the NCDPS.  Plaintiff claims defendants' actions constitute violations of the ADA, the Rehabilitation Act, and the Fourteenth Amendment. Plaintiff indicates he is suing defendants in both their official and individual capacity.  As relief, plaintiff seeks an injunction directing defendants to change their policy on forcing inmates with disabilities to work a job assignment without being disciplined or charged $10.00 for a write-up. Plaintiff also seeks unspecified money damages pursuant to the ADA.

The court conducted its frivolity review of plaintiff's complaint on July 8, 2019, and allowed the action to proceed.  Defendants Cameron, Swaim, and Ditta filed an answer to the complaint on November 8, 2019.  On December 18, 2019, defendants filed the instant motion to dismiss the complaint, arguing the complaint fails to state a claim on which relief can be granted. Plaintiff filed an unsigned response in opposition only then alleging that he is disabled due to his diabetes, HIV, and chronic back pain.  On January 21, 2020, the court directed plaintiff to file a signed response, and on February 11, 2020, plaintiff filed an identical copy of page two from his previously unsigned response with his signature included at the bottom.  Thus, the motion was fully briefed.

**STATEMENT OF THE FACTS**

Plaintiff's factual allegations are set forth in full below:

> Cameron discriminated against when she told me that [ADA] doesn't have nothing to with disability. I gave her permission and there to check my medical records, they also force me to take a job assignment, because if I didn't they would of discipline me as wrote me up and charge me $10 because their policy states that I can't refuse a job. On 11-8-18 and 12-10-18 she called me to her office about this. I have a chronic disease as you see, and a chronic disc disease in my back [.]
>
> Swaim she also discriminated against as she told me the same as [ ] Cameron and then [ ] Swaim told that I suppose to have seen someone about [ADA], but I never did. I also saw her on 11-8-18 and 12-10-18 she sign off on the [ADA] report she force me discipline and charge $10 or possible seq time.
>
> [Ellington] who is the [ADA] Coordinator in Raleigh She denied me [ADA] but I sent them the Radiology report with the grievance, and they ignored it. I gave her permission to look into my medical records also. The department of Justice is authorized to investigate complaints under [ADA] which prohibits discrimination against people with disabilities pursuant to 42 U.S.C. [§§] 12131 [and] 12134.
>
> Ditta as the superintendent he also is discriminated as an authority who acting under the color of state law, and "have exercised power" [possessed] by virtue of the state law and made possible only because the wrong doer is clothed with the authority of state law.

(Compl. (DE 1) at 5-6).[2]

## COURT'S DISCUSSION

A.  Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint is legally and factually sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). "To survive a motion to dismiss, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level'—that is, the complaint must contain 'enough facts to state a claim for relief that is plausible

---

[2] Plaintiff also submitted eight pages of grievance procedure documentation, an Inmate Reasonable Accommodation Request, and four pages of medical records. (Pl.'s Documents in Support (DE 1-1)).

3

on its face.'" King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).

When considering a motion to dismiss, the court need neither accept a complaint's legal conclusions drawn from the facts, see Iqbal, 556 U.S. at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted). The court, nevertheless, presumes as true the factual allegations in the complaint and construes these allegations in the light most favorable to the non-moving party. Albright v. Oliver, 510 U.S. 266, 268 (1994); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Although the court liberally construes pro se filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), all complaints still must contain "more than labels and conclusions," Twombly, 550 U.S. at 555.

B. Analysis

    1. Eleventh Amendment Immunity

Defendants raise the defense of Eleventh Amendment immunity to plaintiff's claims against defendants Cameron, Swaim, Ellington, and Ditta in their official capacities regarding plaintiff's assertions that their actions violated Title II of the ADA and the Rehabilitations Act. The court agrees and also concludes that any claims against NCDPS are also barred.

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, by Citizens or any Foreign State." U.S. Const. amend.

XI. The Eleventh Amendment bars suits against a state or its agencies, unless the state has waived its immunity, or Congress has exercised its power under § 5 of the Fourteenth Amendment to override that immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995). State officials acting in their official capacity are also protected. Ballenger v. Owens, 352 F.3d 842, 845 (2003).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

"Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." Seremeth v. Bd. of Cty. Comm'rs, 673 F.3d 333, 336 n.1 (4th Cir.2012) (internal quotation marks omitted).

While North Carolina has not waived its immunity regarding claims brought pursuant to Title II of the ADA and the Rehabilitation Act, Congress made it applicable to the states and state agencies, such as state prisons. United States v. Georgia, 546 U.S. 151, 159 (2006) Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); Fauconier v. Clarke, 966 F.3d 265, 280 (4th Cir. 2020). However, in abrogating state sovereign authority, Congress must act pursuant to a valid grant of constitutional authority. Tennessee v. Lane, 541 U.S. 509, 517 (2004); Georgia, 546 U.S. at 159

5

("[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that actually violated the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.") Under § 5 of the Fourteenth Amendment, Congress may abrogate the States' sovereign immunity in the following two circumstances: (1) for "cause[s] of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Georgia, 546 U.S. at 159; or (2) for "so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct," Lane, 541 U.S. at 518.

The Fourteenth Amendment provides, "No state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV. "[T]he classifications and work assignments of prisoners in [state] institutions are matters of prison administration, within the discretion of the prison administrators…[and] [t]o hold that they are 'within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges.'" Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978) (quoting Meachum v. Fano, 427 U.S. 215, 228-29 (1976)). "Broadly speaking, the substantive due process provision of the Fourteenth Amendment protects against egregious, arbitrary governmental conduct. Only governmental conduct that shocks the conscience is actionable as a violation of the Fourteenth Amendment." Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001) (internal citations and quotations omitted). In order to state an equal protection claims, a plaintiff must "'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'"

6

Id. at 730-31 (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). "When equal protection challenges arise in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. In a prison context, therefore, [the court] must determine whether the disparate treatment is reasonably related to any legitimate penological interests." Veney v. Wyche, 293 F.3d 726, 732 (4th Cir. 2002) (internal citations and quotations omitted).

Here, plaintiff's conclusory statements regarding being forced to work a job assignment are not sufficient to overcome the presumption of reasonableness applied to prison policies, nor are they sufficient to plausibly allege defendants discriminated against plaintiff because of his disability. Accordingly, defendants' conduct does not actually violate the Fourteenth Amendment.

An abrogation of sovereign immunity is a valid exercise of Congress' prophylactic enforcement powers, "if it exhibits 'a congruence and proportionality' between an injury and the means adopted to prevent or remedy it." Lane, 541 U.S. at 510 (quoting City of Boerne v. Flores, 521 U.S. 507, 520 (1997)). To make such a determination, the court applies the City of Boerne congruence test, which instructs as follows: (1) identify the constitutional rights Congress sought to enforce when it enacted Title II; (2) determine whether Congress enacted Title II in response to a pattern of unconstitutional disability discrimination; and, (3) to determine whether the rights and remedies created by Title II are congruent and proportional to the constitutional rights it purports to enforce and the record of constitutional violations cited by Congress. Id. at 510-12; see also Chase v. Baskerville, 508 F. Supp. 2d 492, 499 (E.D.Va.2007) aff'd on other grounds, 305 F. App'x 135 (4th Cir.2008).

Other courts have held that Title II of the ADA does not appropriately abrogate state sovereign immunity in the prison context. See, e.g., Dorn v. Mich. Dep't of Corr., Case No. 1:15-CV-359, 2017 WL 2436997, at *7 (W.D. Mich. June 6, 2017) (prison context); Steele v. Thaler, Civil Action No. H-09-4076, 2011 WL 739524, at *11 (S.D. Tx. Feb. 22, 2011) (prison context); Leach v. Owens, No. A-09-CA-421-JN, 2010 WL 5266063, at *5 (W.D. Tx. Dec. 15, 2010) (prison context). Further, district courts within the Fourth Circuit have found that, in the prison context, Title II of the ADA fails the third step. See Chase v. Baskerville, 508 F. Supp. 2d 492, 499 (E.D. Va. Aug. 2, 2007); Belk v. Smith, No. 1:10CV724, 2013 WL 5430426 at *9 (M.D.N.C. Sept. 27, 2013). Specifically, in Chase, the court found that there was "little persuasive support for the proposition that Title II's comprehensive remedial scheme is an appropriately calibrated enforcement mechanism for the [Fourteenth Amendment] rights and the policy of judicial restraint in the prison context." Chase, 508 F. Supp. 2d at 501. The court in Chase concluded, "in the prison setting (1) Title II's goal of accessibility and accommodation is generally not congruent with the rights it implicates, and (2) Title II's indiscriminate demand for accommodation and accessibility on pain of money damages is wildly disproportionate to enforcing any constitutional rights." Id.

The court came to a similar conclusion in Belk, finding that "[p]ermitting Title II to abrogate state sovereign immunity as to prisoners seeking only prophylactic enforcement of their right to be free from irrational disability discrimination... would convert '[s]ervices that had been offered purely as a matter of grace' into 'vehicles for liability . . . , and it would do so in the context of a system in which states have significant more leeway in restricting individuals' constitutional rights." 2013 WL 5430426 at *9. Belk, like Chase, concluded that enforcing the rights created

8

by Title II of the ADA "through an abrogation of state sovereign immunity is not a congruent and proportional response to history of unconstitutional behavior." Id.

The court agrees with the conclusions reached in Chase and Belk and finds that allowing plaintiff to enforce his alleged rights under Title II of the ADA and the Rehabilitation Act is not a congruent and proportional response. Therefore, plaintiff's claims against Cameron, Swaim, Ellington, and Ditto in their official capacity and those against NCDPS are barred by the Eleventh Amendment.

2. Injunctive Relief

Defendants argue that plaintiff's claims for injunctive relief are moot, and the court agrees. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir.2009); see also Moneyhan v. Keller, 563 F. App'x 256, 258 (4th Cir. 2014) (concluding that the district court correctly determined plaintiff's claim or injunctive relief was rendered moot by his release).

Plaintiff was released from custody on August 18, 2019. (Pl.'s Notice of Change of Address (DE 14)). Plaintiff only asserts harm to himself as a result of being required to work a job assignment. Any harm plaintiff suffered from being required to work a job assignment ended at his release. Further, plaintiff has not made any argument that his request for injunctive relief is not moot. Without the threat of future harm, plaintiff is not entitled to injunctive relief. Accordingly, plaintiff's claim for injunctive relief is dismissed as moot.

9

3. ADA and Rehabilitation Act Claims

Even if plaintiff's claims against Cameron, Swaim, Ellington, and Ditto in their official capacity and plaintiff's claims against NCDPS were deemed not to be barred by the Eleventh Amendment, plaintiff's claims are without merit. Plaintiff alleges defendants violated Title II of the ADA and Section 504 of the Rehabilitation Act. As stated above, both prohibit discrimination against people with disabilities. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

"Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." Seremeth v. Bd. of Cty. Comm'rs, 673 F.3d 333, 336 n.1 (4th Cir.2012) (internal quotation marks omitted). Title II of the ADA explicitly provides that "[t]he remedies, procedures, and rights" provided under § 504 of the Rehabilitation Act "shall be the remedies, procedures and rights [that Title II of the ADA] provides to any person alleging discrimination on the basis of disability ...." 42 U.S.C. § 12133. Although the statutes have some important differences, including a different "causative link between discrimination and the adverse action," Baird ex rel. Baird v. Rose, 192 F.3d 462, 469 (4th Cir. 1999), these distinctions are not at issue in this case.

10

In general, a plaintiff seeking recovery for violation of either statute must allege that "(1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability." Baird ex rel. Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999); Fauconier v. Clarke, 966 F.3d 265, 276 (4th Cir. 2020) (citing Wicomico Nursing Home v. Padilla, 910 F.3d 739, 750 (4th Cir. 2018)). A condition may quality as a "disability" if the condition "substantially limits one or more major life activities." 42 U.S.C. § 12102; 29 U.S.C. § 705(20)(B).

Plaintiff stated that he has been diagnosed with diabetes and back problems, and while he did not explicitly state that he had been diagnosed with HIV, from the information plaintiff included in his response, it appears he may have been diagnosed with HIV as well. (Pl.'s Resp. (DE 35) at 1-2). Otherwise, plaintiff failed to include any facts that would tend to support his claims. In fact, plaintiff fails to allege at all that he was excluded from a benefit, for example a program or activity due to his disability. Plaintiff failed to address facts regarding his alleged job assignment and any information regarding how his disability prevented him from performing his work assignment. Liberally construed, these allegations fall short of the requisite showings.

To the extent plaintiff seeks money damages against defendants Cameron, Swaim, Ellington, and Ditto in their individual capacity, neither the ADA nor the Rehabilitation Act provide causes of action against defendants in their individual capacities. Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 107 (2d Cir.2001); Barnes v. Young, 565 F. App'x 272, 272 (4th Cir. 2014); Moneyhan, 563 F. App'x at 258; Badillo v. Thorpe, 158 F. App'x 208, 211 (11th Cir. 2005).

Accordingly, plaintiff has failed to state a claim upon which relief can be granted on his

11

claims that the actions of defendants Cameron, Swaim, Ellington, and Ditto, sued in their official capacity, and defendant NCDPS violated Title II of the ADA and § 504 of the Rehabilitation Act. Thus, plaintiff's ADA and Rehabilitation Act claims against defendants Cameron, Swaim, Ellington, and Ditto in their official capacity, and claims against defendant NCDPS are dismissed.

3.   1983 Claims

Section 1983 provides a cause of action for alleged constitutional violations. To establish a claim under § 1983, a plaintiff must prove: " (1) the violation of a right secured by the Constitution and laws of the United States, and (2) that the alleged deprivation was committed by a person acting under the color of state law." Williams v. Studivent, No. 1:09CV414, 2012 WL 1230833, at *4 (M.D.N.C. 12 Apr. 2012) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). To show that a defendant acted under the color of state law, " ' [t]he person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state' s actions.'" Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615-16 (4th Cir. 2009) (quoting DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999)).

Plaintiff asserts that defendants violated his Fourteenth Amendment rights by requiring him to work on a job assignment although he was allegedly disabled. As stated above, plaintiff has failed to allege facts constituting a Fourth Amendment rights violation. Accordingly, his Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 is dismissed.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 26) is GRANTED and plaintiff's claims against are DISMISSED WITH PREJUDICE. The clerk is DIRECTED to close this

12

case, and to amend the caption as set forth in footnote one.

SO ORDERED, this the 30th day of September, 2020.

*Richard E Myers II*
RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE